# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

ALYSSA S. MILLER,                          :
    Plaintiff,                          :          CIVIL ACTION
                                  :
    v.                                  :
                                    :
KILOLO KIJAKAZI,                           :          NO. 21-cv-01343-RAL
Commissioner of Social Security,[1]        :

**RICHARD A. LLORET**                                            **July 14, 2022**
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

Alyssa Miller filed a claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") with the Commissioner of Social Security. An Administrative Law Judge ("ALJ") denied her application, and the Appeals Council affirmed the ALJ's decision. Ms. Miller alleges that the ALJ erred in relying upon a Social Security ruling rather than the testimony of a vocational expert in conducting her step five analysis, as well as by failing to incorporate all relevant limitations in her hypothetical to the vocational expert. The Commissioner responds that the ALJ acted properly in relying upon the Social Security Ruling and her hypotheticals were supported by substantial evidence. After carefully reviewing the record, I find that the ALJ committed legal error in reaching her step five conclusion. I will reverse the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g) (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

Commissioner's denial of benefits and remand this matter for further proceedings consistent with this opinion.

## PROCEDURAL HISTORY

On July 19, 2018, Ms. Miller filed claims for DBI and SSI, alleging a disability beginning on October 1, 2014. Administrative Record ("R.") 22. Her alleged disability onset date was later amended to November 30, 2014. R. 60–61. Her claims were initially denied on November 20, 2018. R. 22.

On February 11, 2019, Ms. Miller requested an administrative hearing before an ALJ. *Id.* The ALJ held the hearing on October 17, 2019 and issued a decision denying Ms. Miller's claim on January 15, 2020. R. 19, 22, 36–37. On March 3, 2020, Ms. Miller appealed the ALJ's unfavorable decision to the Social Security Administration's Appeals Council. R. 144. The Appeals Council denied Ms. Miller's request for review on January 19, 2021. R. 1. Ms. Miller filed this appeal in federal court on March 21, 2021. Doc. No. 1.

The parties consented to my jurisdiction (Doc. No. 6) and have briefed the appeal. Doc. No. 12 ("Pl. Br."), 15 ("Comm'r Br."), and 18 ("Pl. Reply").

## FACTUAL BACKGROUND

### A. The Claimant's Background

Ms. Miller was twenty-two years old on the date of her alleged disability onset, making her a "younger person" under the regulations. R. 35; 20 C.F.R. §§ 404.1563, 416.963(c). She has at least a high school education and can communicate in English. R. 35. She has no past relevant work. *Id.* On July 19, 2018, Ms. Miller applied for DBI and SSI, alleging disability based on depression, anxiety, panic disorder, irritable bowel syndrome, and ulcers. R. 22, 98.

**B. The ALJ's Decision**

On January 15, 2020, the ALJ issued her decision finding that Ms. Miller was not eligible for DBI or SSI because she has not been under a disability, as defined by the Social Security Act. R. 19, 36–37. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation.[2]

At step one, the ALJ concluded that Ms. Miller had not engaged in substantial gainful activity ("SGA") since November 30, 2014. R. 25. At step two, the ALJ determined that Ms. Miller had the following severe impairments: major depressive disorder and anxiety disorder. *Id.*

At step three, the ALJ compared Ms. Miller's impediments to those contained in the Social Security Listing of Impairments ("listing").[3] The ALJ found that Ms. Miller did not meet any listing criteria, including that of listing 5.06 for inflammatory bowel disease, listing 12.04 for depressive, bipolar, and related disorders, and listing 12.06 for anxiety and obsessive-compulsive disorders. R. 27. Furthermore, the ALJ found that none of Ms. Miller's mental health impairments met or medically equaled listings 12.04

---

[2] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[3] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id.*

(depressive, bipolar, and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders), as she did not have one extreme or two marked limitations in the "paragraph B" criteria and did not establish the presence of any "paragraph C" criteria. R. 27–29. The ALJ concluded that Ms. Miller faced moderate limitations in the functional domains of concentrating, persisting, or maintaining pace and adapting or managing oneself. R. 28–29.

Prior to undertaking her step four analysis, the ALJ assessed Ms. Miller's residual functional capacity ("RFC"), or "the most [Ms. Miller] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ found that Ms. Miller could undertake a full range of work at all exertional levels with a non-exertional limitation of "normal work breaks during the day" and a requirement that work "involve simple, routine tasks consistent with unskilled work." R. 29–35. At step four, the ALJ found that Ms. Miller has no past relevant work. R. 35–36. At step five, the ALJ opined that Ms. Miller's "ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels." R. 36. The ALJ concluded, citing to SSR 85-15, that Ms. Miller "does not have a substantial loss of ability to meet any of these basic work activities, as she is capable of performing work involving simple, routine tasks consistent with unskilled work at all exertional levels with normal work breaks during the day." R. 36. As a result, the ALJ found that Ms. Miller was "not disabled." R. 36–37.

## STANDARDS OF REVIEW

My review of the ALJ's decision is deferential; I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp*

*v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g). "A reviewing court reviews an agency's reasoning to determine whether it is 'arbitrary' or 'capricious,' or, if bound up with a record-based factual conclusion, to determine whether it is supported by 'substantial evidence.'" *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an

ALJ's decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

## DISCUSSION

Ms. Miller argues that the ALJ erred by finding that she had moderate limitations in two areas of mental functioning, yet failing to include corresponding limitations in reaching her RFC finding and presenting a hypothetical question to the vocational expert. Doc. No. 12, at 6–9. Ms. Miller also alleges that the ALJ committed legal error by relying solely on the Medical-Vocational Guidelines when conducting her step five analysis without prior notice or taking additional vocational evidence. *Id*. at 9–12.[4]

The Commissioner responds that the ALJ's RFC properly accounted for Ms. Miller's moderate limitations in two areas of mental functioning. Doc. No. 15, at 17–21. The Commissioner also asserts that the ALJ properly relied upon the Medical-Vocational Guidelines to find that Ms. Miller is not disabled. *Id*. at 21–23. Ms. Miller replied to the Commissioner's arguments. Doc. No. 18.

After a careful review of the record, I find that the ALJ indeed committed legal error by relying on a Social Security Ruling which did not clearly dispose of Ms. Miller's application in reaching her conclusion in step five without prior notice to Ms. Miller. I will remand the case to the Commissioner for further review consistent with this

---

[4] Ms. Miller also originally argued that the Commissioner's decision in her case is constitutionally defective and merits reversal because Commissioner Andrew Saul, who oversaw the agency when the ALJ entered her final decision, was protected by an unconstitutional removal statute and served a longer term than the president, in violation of separation of powers principles. Doc. No. 12, at 4–6. Ms. Miller withdrew her separation of powers challenge in her reply brief. Doc. No. 18, at 1.

opinion. As I am remanding on the grounds of legal error, I need not address Ms.

Miller's arguments concerning the ALJ's RFC analysis.

**A. The ALJ committed legal error by relying upon SSR 85-15 without prior notice to Ms. Miller, as its applicability to her case is not "crystal clear."**

In finding that Ms. Miller is not disabled, the ALJ cites SSR 85-15 in concluding

that Ms. Miller does not have any non-exertional limitations which limit her ability to

engage in unskilled work at all exertional levels. R. 36. Ms. Miller asserts that the ALJ's

reliance on SSR 85-15 was erroneous, as she was never provided notice and an

opportunity to be heard on the SSR's applicability to her case, and SSR 85-15 is not

"crystal clear" in its applicability to her case. I agree with Ms. Miller and find that the

ALJ committed legal error by relying on SSR 85-15 in reaching her step five conclusion

without engaging in the individualized determinations required under the Ruling.

The Commissioner bears the burden at step five to prove that jobs exist in

significant numbers in the national economy that the claimant is able to perform.

*Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004). The Commissioner may rely on

a set of medical-vocational guidelines, or "grids," promulgated through proper

rulemaking, when making a step five finding for a claimant with certain exertional

limitations. *Sykes v. Apfel*, 228 F.3d 259, 263–64 (3d Cir. 2000) (citing *Heckler v.

Campbell*, 461 U.S. 458, 467 (1983)). *Sykes* imposed limitations on how the

Commissioner could use the grids to deny disability when a claimant suffered from non-

exertional as well as exertional limitations, reasoning that the grids only dealt with

exertional limitations. *Id*. at 270. In the absence of fact-finding in SSRs or regulations

that dealt with specific non-exertional limitations and their effect on limiting available

jobs in the national economy, the court required individualized fact finding by the ALJ, based on substantial evidence - for instance, a vocational expert's testimony. *Id.*

In response to *Sykes*, the Commissioner promulgated an Acquiescence Ruling generally prohibiting ALJs deciding cases within the Third Circuit's jurisdiction from exclusively relying on the grid framework to make a finding about the effect on the claimant's available occupational base when nonexertional limitations are present, instead requiring ALJs to rely on vocational evidence or provide notice and an opportunity to respond before relying on regulatory fact-finding to deny the claim. *Allen v. Barnhart*, 417 F.3d 396, 404 (3d Cir. 2005) (quoting Sykes v. Apfel*; Using the Grid Rules as a Framework for Decisionmaking When an Individual's Occupational Base Is Eroded by A Nonexertional Limitation-Titles II & XVI of the Soc. Sec. Act*, AR 01-1(3), 2001 WL 65745, at *4 (S.S.A. Jan. 25, 2001)). The Commissioner carved out an exception (which has been upheld by the Third Circuit) for "'claims where we rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects the claimant's occupational job base.'" *Id.* (quoting AR 01-1(3), 2001 WL 65745, at *4). Nevertheless, "if the [Commissioner] wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Id.* at 407. The Third Circuit has directed courts "to give close scrutiny to the ALJ's reliance on a Ruling as satisfying the Commissioner's burden at Step 5 where the Commissioner has not previously advised or argued the clear applicability of the Ruling in advance of the hearing." *Id.* at 408.

I find that the ALJ committed legal error by relying on SSR 85-15 in her step five analysis without engaging in the individualized determinations required by the ruling and without prior notice to Ms. Miller. "SSR 85-15 is a ten-page ruling that specifically addresses the relationship of different mental impairments to job activity." *Allen*, 417 F.3d at 404. Rather than engage in the individualized determinations required by the Ruling for claimants with mental impairments, the ALJ simply used the Ruling's definition of unskilled labor to justify her conclusion that Ms. Miller could engage in unskilled labor irrespective of exertional level. This was improper.

The ALJ cited to the following portion of SSR 85-15 in reaching her step five conclusion:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

R. 36 (quoting *Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15, 1985 WL 56857, at *4 (S.S.A. Jan. 1, 1985)). The ALJ then wrote, "The claimant does not have a substantial loss of ability to meet any of these basic work activities, as she is capable of performing work involving simple, routine tasks consistent with unskilled work at all exertional levels with normal work breaks during the day." R. 36.

The problem with this finding is that it is based on a logical error. The language of SSR 85-15 provides a basis for finding disability if a claimant has a "substantial loss of ability to meet . . . basic work activities," but that does not logically entail a finding of

non-disability if the claimant has something less than a "substantial loss of ability" within the meaning of SSR 85-15. This becomes clear when one reads the next subsection of SSR 85-15, unmentioned by the ALJ, concerning stress and mental illness:

> Since mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings. Determining whether these individuals will be able to adapt to the demands or "stress" of the workplace is often extremely difficult. *This section is not intended to set out any presumptive limitations for disorders, but to emphasize the importance of thoroughness in evaluation on an individualized basis.*

SSR 85-15, at *5 (emphasis added). Not only is there no individualized determination of Ms. Miller's ability to respond to the demands of the workplace in her step five analysis, but there is no discussion anywhere in the opinion of Ms. Miller's ability to respond to the demands of the workplace. Instead, the ALJ cited to SSR 85-15 as if it conclusively ruled out disability in the absence of a "substantial loss of ability to meet any of these basic work-related activities." R. 36.

SSR 85-15 does not contain "crystal-clear" (*see Allen*, 417 F.3d at 407) descriptions of non-exertional limitations less than a "substantial loss of ability to meet any of these work-related activities," or relate them to a claimant's ability to do work. The rule points to "substantial loss" as warranting a disability finding, but leaves lesser levels of non-exertional limitation to individualized fact-finding by the ALJ. That individualized fact-finding did not happen here. Nor did the ALJ provide notice of her intention to rely on SSR 85-15 in lieu of individualized fact-finding. The ALJ's reliance on SSR 85-15 in her step five analysis is therefore erroneous as a matter of law. The ALJ did exactly what *Sykes* prohibited by relying on a rule as a substitute for individualized fact-finding where the rule does not identify "jobs in the national economy for claimants with combined exertional and nonexertional limitations or identify[] nonexertional

impairments that are not significant enough to diminish a claimant's occupation base considering his exertional impairment alone." *Sykes*, 228 F.3d at 270.

The ALJ did call a vocational expert to the stand to testify as to whether jobs existed in sufficient numbers in the national economy given Ms. Miller's RFC. The ALJ presented the following limitations in her hypothetical to the vocational expert: medium work with simple routine tasks, no contact with the general public, occasional interaction with supervisors, less than occasional interaction with coworkers, and unscheduled, unannounced breaks up to four times per workday. R. 67. The vocational expert testified there would be no jobs available. *Id*. The ALJ then asked about a hypothetical claimant unable to leave her house more than three times per month. *Id*. Again, the vocational expert testified that there would be no available jobs. *Id*. The vocational expert never testified to a hypothetical set of non-exertional limitations under which there would be jobs available in the national economy. Nor is the vocational expert's testimony cited in the ALJ's opinion. It is clear that the ALJ relied on SSR 85-15 to find that there are jobs available to Ms. Miller, given her exertional and non-exertional limitations. The vocational testimony in this case does not cure the legal error.

The Commissioner notes that the Third Circuit recently relaxed its rules concerning how certain nonexertional limitations may be considered in an ALJ's RFC determination. *See* Doc. No. 15, at 17 (citing *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198 (3d Cir. 2019)). "A 'simple tasks' limitation is appropriate after a finding of 'moderate' difficulties in 'concentration, persistence, or pace,' if a 'valid explanation' is given." *Hess*, 931 F.3d at 210. A valid explanation encompasses sound reasoning based on the record. *See id*. at 213–14. *Hess* is beside the point. The question in *Hess* was whether the

language used in the hypothetical to the vocational expert adequately captured the nature and extent of the non-exertional limitations. *Id*. at 208. The holding in *Hess* does not eliminate the Commissioner's burden to establish the availability of jobs in the national economy, at step five (*see Ramirez*, 372 F.3d at 551), nor does it dispense with the individualized analysis required under *Sykes* and SSR 85-15. *See Allen*, 417 F.3d at 405–06; *see also Mininni v. Colvin*, No. CV 14-305E, 2016 WL 1117609, at *3–4 (W.D. Pa. Mar. 21, 2016) (an ALJ's reliance on SSR 85-15 without notice or the testimony of a vocational expert is erroneous when there is no corresponding analysis as to how the Ruling's categories and examples encompass a claimant's particular mental limitations).

The ALJ committed legal error by relying on SSR 85-15 in her step five analysis without prior notice to Ms. Miller and by failing to undertake the individualized determinations required by the ruling. This warrants a remand to the Commissioner.

### B. I will not take up any challenge to the ALJ's RFC findings or hypotheticals presented to the vocational expert, as Ms. Miller's RFC may change on remand.

Since I am remanding because of a legal error, I will not take up any challenges to Ms. Miller's RFC or the hypotheticals presented to the vocational expert, as Ms. Miller's RFC may well change on remand. The ALJ should ensure that each of her conclusions is rooted in substantial evidence based on the record and that all plausible limitations in her RFC are properly presented to the vocational expert.

## CONCLUSION

For the reasons explained, Ms. Miller's request for review is granted, the final decision of the Commissioner is reversed, and this matter is remanded to the Commissioner for further proceedings consistent with this opinion.

**BY THE COURT:**


*s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**